[Civ. No. 6073. Second Appellate District, Division Two.—July 27, 1928.]

HARTFORD ACCIDENT & INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and HELEN C. SHAFFER, Respondents.

George L. Greer for Petitioner.

G. C. Faulkner for Respondents.

CRAIG, J.—The respondent Helen C. Shaffer was injured while soliciting prospective purchasers of real estate in the city of Los Angeles, on October 20, 1927, as an employee of the Beeman and Rice Realty Company. She made application to the division of industrial accidents and safety, and after a hearing the Commission awarded $192.50 hospital expenses at $3.50 per day, and allowed the applicant $11.12 per week, beginning October 28, 1927, until the termination of disability or further order of the Commission, and dismissed as to the employer. A motion for rehearing was presented, which was denied, and the insurance carrier, petitioner herein, instituted this proceeding to review said award.

It appears that the applicant was employed by assistant sales managers of the realty company to solicit prospective buyers of lots in a tract which it was developing, at the agreed sum of $2 for each person whom she might interest in the property and cause to visit the tract, and a commission of one per cent upon any sales she might make. The record is not clear as to the exact time that she had been so employed. She testified that she began work on the 18th of October, 1927, and also that she worked ''3 or 4 days''; a representative of the company testified that she worked five days; and the respondent Commission in its briefs recites that she earned ''$66.50 during her employment of four or five days.''

It is the contention of the petitioner that Mrs. Shaffer was not an employee, but that she was an independent contractor, and that the evidence does not justify the award. It is conceded that she was not limited to any particular territory in which to work, nor was she furnished by the company with the names of people whom she should interview; and she testified that she ''had no specified hours'' so long as she did her work and obtained her load for the following day. It appears, however, that she was required to telephone to the main office each morning whether she had prospects or not; that she was not instructed to any great extent, because of her past long experience in selling real estate; that private machines of the company called for her each morning, and she directed them to the residences of her prospects, whom they conveyed to the tract. The manager also testified that a meeting for the instruction of salesmen and solicitors was held each Monday evening, at which attendance was required; that it was not optional with them whether they should attend or not, and that the company held up their checks in the event of absence without good cause. Another of the company's witnesses testified that a good solicitor would average $20 to $25 per week, and that one working as the applicant did would average at least $22 per week. It was further testified that such solicitors ''can't work for another real estate company while they work for us.''

If this statement of facts leaves any doubt as to whether or not the applicant was an independent contractor, it is especially important to observe that since the fact is

undisputed that at the time of the injury she was rendering services for the Beeman and Rice Realty Company, the burden of proof that the employee was an independent contractor was upon the party raising such issue. (*York Junction Tr. & S. Co.* v. *Industrial Acc. Com.*, 202 Cal. 517 [261 Pac. 704].) ▪ Referring to the definition of an independent contractor as it is stated in the Workmen's Compensation Act, our supreme court has said: ''One who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished'' is an independent contractor. (*Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851]; *Fidelity & C. Co.* v. *Industrial Acc. Com.*, 191 Cal. 404 [43 A. L. R. 1304, 216 Pac. 578].) It cannot be said that in the instant proceeding the employer has complied with the rule requiring that it show that the employee was under the control of the principal ''as to the result of the work only.'' On the contrary, it would appear that here the employer had the right to control the mode in which the work was to be done; the employee was required to attend meetings every Monday night, which were called salesmen's meetings. Except for this designation there is nothing to indicate their purpose, but in the absence of showing to the contrary it may be assumed that the employees were given such instructions as the employer might see fit to give upon such occasions. It was testified by the applicant that she was not instructed to any extent because her past experience made it unnecessary. However, this is a concession that the right to give instructions was recognized as existing. It is clear, too, that the employer had the right to terminate the employment at any time. This is a circumstance ''tending strongly to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by the independent contractor.'' (*Eng-Skell Co.* v. *Industrial Acc. Com.*, 44 Cal. App. 210 [186 Pac. 163]; *Fidelity & C. Co.* v. *Industrial Acc. Com.*, *supra.*) Nor is it inconsistent with the theory that the applicant was not an independent contractor that she might perform other work than that for the principal. (*Helmuth* v. *Industrial Acc. Com.*, 59 Cal. App. 160 [210 Pac. 428].)

However, it was testified in this case that she was not permitted to work for any other real estate employer while engaged in the work in question.

We therefore conclude that the applicant was an employee of the real estate company by whom she was employed and for whom she performed services, up to and including the time of her injury. Her employment was in the nature of piece-work; she worked from day to day, and could discontinue work at any time; she was required to report every morning. The case falls within the rule of *Helmuth* v. *Industrial Acc. Com., supra.*

The award is affirmed.

Works, P. J., and Thompson, J., concurred.